UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

CASE NO. 00-6099-CIV-GRAHAM

Magistrate Judge: Turnoff

CAREEN DIAZ,

    Plaintiff,

v.

COLUMBIA HOSPITAL CORPORATION
OF SOUTH BROWARD,

    Defendant.

_____/

## DEFENDANT WESTSIDE'S MEMORANDUM OF LAW
## IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Defendant, COLUMBIA HOSPITAL CORPORATION OF SOUTH BROWARD, d/b/a WESTSIDE REGIONAL MEDICAL CENTER ("Westside" or "Hospital"), hereby submits this Memorandum of Law in Support of its Motion for Summary Judgment as to all claims.

## INTRODUCTION

Plaintiff, Careen Diaz, is a registered nurse and was employed at Westside from February 1997 until she resigned in March 2000. She originally worked as a Patient Care Assistant while attending nursing school. Upon completion, she enrolled in the Hospital's Preceptor Program for nursing graduates with no job experience. Under the seven-week Program, Westside trained recent graduates for the job of a registered nurse. The nurses did not have to commit to remain in the Hospital's employ and, at the same, Hospital did not promise to employ the nurses after completion of the Program. The Hospital did not pay nursing graduates for their time spent in

WPB#536768.02

this orientation program. In October 1997, after she completed the Program, Ms. Diaz was hired by Westside as a registered nurse.

Plaintiff claims that two Caucasian individuals who precepted at the Hospital were paid for their time while precepting, and that she was not. Plaintiff further claims that after she complained of this disparity, she was retaliated against by the Hospital in a variety of ways. She has asserted two counts against Westside under 42 U.S.C. § 1981. Count I is for disparate treatment based upon her race (African American), and Count II is for retaliation.

### I. SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that a summary judgment may be entered:

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Here, Westside bears the initial burden of demonstrating that there is no genuine issue of material fact to support Plaintiff's claims. *American Viking Contractors, Inc. v. Scribner Equipment, Inc.*, 745 F.2d 1365, 1369 (11th Cir. 1984). Once Westside meets this burden, the Plaintiff must produce evidence demonstrating the existence of a triable issue of fact. The question then is "not whether there is literally no evidence, but whether there is any evidence upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of burden of proof is imposed." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Initially, the movant's burden is limited to pointing out the likelihood that the party with the substantive burden of proof cannot satisfy its burden. The moving party is then entitled to judgment as a matter of law if the opposing party fails to establish the essential elements with

respect to which it has the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

A simple factual dispute is not in itself sufficient to avoid summary judgment. The factual issue(s) presented by the Plaintiff must be outcome determinative. *Anderson*, 477 U.S. at 248. Moreover, the Plaintiff is required to show more than the existence of some "metaphysical doubt" as to material facts. "Where the record as a whole could not a lead a rational trier of fact to find for the nonmoving party, there is not a genuine issue for trial." *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Plaintiff's claims under Section 1981, both for disparate treatment and retaliation, require application of the familiar burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Once the Plaintiff establishes a prima facie claim, the defendant must then produce legitimate non-discriminatory reasons for the adverse employment action. Because the employer need only produce, not prove, a non-discriminatory reason, this burden is exceedingly light. *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997). The burden then shifts to the plaintiff to establish that the employer's proffered reasons were pretextual and that the adverse employment action was motivated by an intent to discriminate, such that the action would not have been taken but for the plaintiff's membership in a protected group. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981).

To meet her burden of establishing pretext, the Plaintiff must present "concrete evidence in the form of specific facts" demonstrating that the employer's proffered reason was actually pretextual. *Earley v. Champion International Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990). The plaintiff's evidence must be sufficient to permit a reasonable fact finder to conclude that the reasons given by the employer were not the real reasons for the adverse employment action.

*Combs*, 106 F.3d at 1528. Conclusory allegations of discrimination are insufficient to raise an inference of pretext or discriminatory intent, particularly where an employer offers extensive evidence of non-discriminatory reasons for its actions. *Elrod v. Sears, Roebuck and Co.*, 939 F.2d 1466, 1471 (11th Cir. 1991).

Under this standard for summary judgment review, the Eleventh Circuit and this Court have frequently found summary judgment appropriate in employment discrimination cases. *See, e.g., Combs v. Plantation Patterns*, 106 F.3d 1519 (11th Cir. 1997); *Russell v. American Eagle Airlines, Inc.*, 46 F. Supp.2d 1330 (S.D. Fla. 1999). In this case, Ms. Diaz has failed to bring forth the evidence necessary to sustain her claims for discrimination or retaliation. Westside is therefore entitled to summary judgment.

## II.    ARGUMENT

### A.    PLAINTIFF'S DISPARATE TREATMENT CLAIM

In Count I, Plaintiff alleges that she was treated differently than other similarly situated employees because of her race. In order to state a prima facie case of discrimination on account of race, "plaintiff must show: (1) [s]he is a member of a protected class; (2) [s]he suffered an adverse job action; (3) [her] employer treated similarly-situated employees outside [her] classification more favorably; and (4) [s]he was qualified to do the job." *Crews v. First Corrections Corp.*, 94 F. Supp.2d 1277, 1287-88 (S.D. Ala. 2000). In the present case, Ms. Diaz cannot establish a prima facie case because she cannot show that any similarly situated non-black employees were treated better than she. Even if Plaintiff were able to establish a prima facie case, Westside would still be entitled to summary judgment because it had a legitimate, non-discriminatory reason for treating the employees differently, and Plaintiff can bring forth no evidence of pretext.

1.  **Plaintiff identifies no similarly situated co-workers**.

"If a plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate where no other evidence of discrimination is present." *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997) (affirming summary judgment for employer because plaintiff could not establish that differently treated co-workers were similarly situated to him). It is incumbent upon the plaintiff to establish that the similarly situated employees are in fact similar in all respects. *Id.*; *Mitchell v. Toledo Hospital*, 964 F.2d 577 at 583 (6th Cir. 1992). To be similarly situated, the individuals with whom plaintiff seeks to compare herself with must have: "(1) dealt with the same supervisor, (2) been subject to the same standards, and (3) engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Sanguinetti v. United Parcel Service, Inc.*, 114 F. Supp.2d 1313, 1317 (S.D. Fla. 2000).

In our case, Ms. Diaz cannot identify a single employee of another race who participated in the same Preceptor Program and that was treated more favorably than herself. Ms. Diaz asserts that "two Caucasian nurses" were paid for time spent precepting, whereas she was not. However, those two nurses went through a different orientation program at a later date. Ms. Diaz acknowledges that these employees participated at different times and in a different program. As reflected in the attached Affidavits, the Hospital changed its graduate nursing orientation program and began to compensate participants as an incentive to attract more nurses, in light of the changing market and rising shortage of qualified nurses. This new program was implemented in 1999, after Plaintiff's participation in the Preceptor Program. Those nursing

graduates who participated with Ms. Diaz in the earlier Preceptor Program--*i.e.*, the similarly situated individual--were all treated the same: none were paid for time spent precepting.[1]

Additionally, Ms. Diaz concedes that these "two Caucasian nurses" had a different supervisor than she did during their internship. Ms Diaz was precepted by Eileen Ciotti, and the subsequent nurses were precepted under Sue Wakat. Since these comparators dealt with different supervisors during their preceptorship, they are not "similarly situated" as a matter of law. *See Sanguinetti v. United Parcel Service, Inc.*, 114 F.Supp.2d at 1317.

Plaintiff's inability to identify other employees for purposes of comparison is a "fatal shortcoming" in her disparate treatment claim. *Alexander v. Fulton County*, 207 F.3d, 1304, 1346 (11th Cir. 2000) (reversing judgment for plaintiff who failed to "present evidence of a similarly situated" employee of another race). Plaintiff cannot meet her burden of establishing a prima facie case of disparate treatment because she cannot show "that she and the [non-black] employees are similarly situated in all relevant respects." *Jones v. Bessemer Carraway Medical Center*, 137 F.3d 1306, 1311 (11th Cir. 1998). *See also Holifield*, 115 F.3d at 1562 ("As part of the Title VII plaintiff's prima facie case, the plaintiff must show that [her] employer treated similarly situated employees outside [her] classification more favorably than herself.")

Because "Plaintiff fails to identify similarly situated, non-minority employees who were treated more favorably, her case must fail because the burden is on her to establish her prima facie case." *Jones*, 137 F.3d at 1311. Plaintiff Diaz' vague speculation that other employees

---

[1] Ms. Diaz also suggests disparate treatment in that one of these "Caucasian nurses" was later allowed to transfer to the emergency room without taking any courses or making any commitment to stay. See Deposition of Careen Diaz, p. 133, l. 24. This assertion, however, is simply untrue. The other nurse (Jennifer Stephan) was required to take a course and make a two-year commitment to stay, as reflected in the Promissory Note attached as Exhibit 1. This suggestion, then, cannot support Plaintiff's claim for disparate treatment.

WPB#536768.02                                6

were treated better than her, is insufficient as a matter of law to raise any inference of discrimination. A "plaintiff's opinion that [s]he has been discriminated against does not suffice to create a prima facie case of race discrimination." *Vincent v. Wells Fargo Services, Inc. of Florida*, 3 F. Supp.2d 1405, 1416 (S.D. Fla. 1998) (granting summary judgment for employer on Title VII and § 1981 race discrimination claims). Westside is therefore "entitled to summary judgment because [plaintiff] has been unable to come forward with a specific instance of discrimination." *Id.* at 1415.

    2.    **Plaintiff cannot rebut Westside's non-discriminatory reason for not compensating her as an Intern.**

Even if Ms. Diaz were able to establish a prima facie case of race discrimination, Westside would still be entitled to summary judgment since it had a non-discriminatory reason for not compensating Plaintiff during her preceptor training. None of the approximate 15 people that went through the BCC Preceptorship Program (along with the Plaintiff) were compensated for time spent precepting at the Hospital. Although this policy later changed, it did so for a legitimate reason. Due to a lack of nurses, and an ever-increasing competitive market for them, the Hospital initiated its own Preceptorship Program and offered to compensate nursing graduates for their participation. Although the Plaintiff may feel that these realities are unfair, she cannot rebut them.

Westside's application of neutral compensation policies is a legitimate, non-discriminatory reason for having treated Ms. Diaz differently than later graduates of nursing schools who subsequently interned at the Hospital. Because Plaintiff can present no evidence that Westside's reason was pretextual, the Court should enter summary judgment in favor of Westside. *See, e.g., Combs v. Plantation Patterns*, 106 F.3d 1519 (11th Cir. 1997); *Russell v. American Eagle Airlines, Inc.*, 46 F. Supp.2d 1330 (S.D. Fla. 1999).

### B. PLAINTIFF'S RETALIATION CLAIMS.

Retaliation claims are cognizable under Section 1981. *See Andrews v. Lakeshore Rehabilitation Hospital*, 140 F.3d 1405, 1412-13 (11th Cir. 1998). To establish a *prima facie* claim for retaliation, a plaintiff must show that (1) she engaged in statutorily protected expression; (2) she suffered an adverse employment action; and (3) there is a causal relation between the two events. *Olmsted v. Taco Bell Corporation*, 141 F.3d 1457, 1460 (11th Cir. 1998). The plaintiff " 'need not prove the underlying claim that led to [her] protest,' however, the plaintiff must have had a reasonable good faith belief that the discrimination existed." *Holyfield*, 115 F.3d at 1566 (citing *Tipton v. Canadian Imperial Bank of Commerce*, 872 F.2d 1491, 1494 (11th Cir. 1989)).

To satisfy the first element, the plaintiff must establish, at a minimum, that she communicated to the Hospital her belief that discrimination had occurred or is occurring. *Webb v. R & B Holding Company, Inc.* 992 F.Supp 1382, 1389 (S.D. Fla. 1998). "It is not enough for the employee merely to complain about a certain policy or certain behavior... and rely on the employer to infer that discrimination has occurred." *Id.* at 1389.

To satisfy as an "adverse employment action," Ms. Diaz must show that the alleged discriminatory action was both objectively and materially adverse. *See Doe v. DeKalb County School District*, 145 F.3d 1441 (11th Cir. 1998)(adopting an objective test to determine if an employment action is adverse). That is, it must be more than "some *de minimus* inconvenience or alteration of responsibilities." *Id.* at 1453. "An adverse employment action is an ultimate employment decision, such as discharge or failure to hire, or other conduct that alters the employee's terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee." *Gupta v. Florida Bd. Of Regents*, 212 F.3d 571, 587 (11th Cir 2000). "Conduct that falls short of an ultimate employment

WPB#536768.02    8

decision must meet 'some threshold level of substantiality..'" *Id.* (quoting *Wideman v. Wal-Mart Stores, Inc.* 141 F.3d 1453, 1456 (11th Cir 1998)). "Not everything that makes an employee unhappy is an actionable adverse action." *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996). The question of whether an employee has suffered an adverse action will normally depend upon the facts of each individual case. *See Gupta*, 212 F.3d at 587.

As to the causation requirement, "the court is essentially looking to see if any inference of retaliation can be drawn from the circumstances surrounding the employer's action." *Dixon v. Young*, 2000 WL 33224515, *8 (N.D. Ga. 2000)(citing *Morgan v. City of Jasper*, 959 F.2d 1542, 1547 (11th Cir. 1992). Where the employer is shown to be aware of the protected expression and the adverse action occurs shortly thereafter, then the short amount of time, standing alone, may be enough to produce an inference of retaliation. *Balletti v. Sun-Sentinel Company*, 909 F.Supp. 1539, 1549 (S.D. Fla. 1995). "The shorter the period between the two events, the stronger the inference that the adverse action was improperly motivated." *Id.* at 1549. Conversely, the longer the period between the protected expression and the adverse employment action, the weaker the inference that the adverse action was motivated by retaliation. Finally, any causal link can be severed where there are instances of intervening unprotected conduct. *See Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136 (8th Cir. 1999)(stating that violating an employer's rules or disrupting the workplace, can "erode any causal connection that was suggested by the temporal proximity of [the] protected conduct and [the adverse action].").

1. **Ringing a call button in a patient room is not an act of retaliation.**

Ms. Diaz claims that her supervisor monitored her responsiveness to a patient call by activating the patient call button in a patient's room when no patient was in the room. However, she acknowledges that she responded to the call and was **never** reprimanded, nor did she suffer

any consequence thereof.[2] Plaintiff also acknowledges that this "test" was performed on other nurses, and that she has no knowledge whether she was singled out for such testing.[3]

Westside has a vested interest in insuring that patients receive proper care and treatment. Any steps taken by the hospital towards this end are both legitimate and non-retaliatory as a matter of law. Simply put, Westside was only ensuring that Ms. Diaz could perform her job as she was expected to do. This conduct never caused her to suffer an adverse employment action, since she was never reprimanded, and thus fails to qualify as a retaliatory act. *See Doe*, 145 F.3d at 1453 (11th Cir. 1998); *Dixon*, 2000 WL 33224515, *8 (N.D. Ga. 2000). [4]

  2. **"Monitoring" of plaintiff's patient charts is not an act of retaliation.**

Ms. Diaz asserts that she was retaliated by her supervisors "monitoring" her nursing charts. Again, she acknowledges that she was never reprimanded or disciplined as a result of this monitoring, but that she was embarrassed in front of her fellow employees.[5] This does not constitute adverse action. *Castro v. New York City Bd. of Educ.*, 1998 WL 108004 at *7 (S.D. N.Y. Mar. 12, 1998)("Although reprimands and close monitoring may cause an employee embarrassment or anxiety, such intangible consequences are not materially adverse alterations of employment conditions").

  3. **Fact that plaintiff was not permitted to assist the charge nurse is not an act of retaliation.**

Ms. Diaz next asserts retaliation when the charge nurse did not allow her to act as her

---

[2] Deposition of Careen Diaz, p. 166, ln 17.

[3] Deposition of Careen Diaz, pp. 165-66.

[4] Defendant would additionally note that the plaintiff is unable to identify when this action took place and thus cannot establish that it either took place after her alleged protected expression, or that there is any causal connection to the same.

[5] Deposition of Careen Diaz, p. 168, ln. 21.

assistant at a time that hurricane protocols went into affect. The charge nurse on the fourth floor was Marleen McKay, a fellow African American. Ms. McKay did not have knowledge of any complaints made by the plaintiff to the Hospital, nor was she ever instructed to take any retaliatory action against her.

Once again, other than embarrassment, Ms. Diaz suffered no other consequence as a result of the decision.[6] She cannot even identify who made the decision that prevented her from assisting the charge Nurse.[7] The fact that Ms. Diaz feels she was not utilized to her fullest capacity does not rise to the level of an adverse action as a matter of law. *Bennett v. Watson Wyatt & Company*, 2001 WL 267001 *7 (S.D.N.Y. Mar. 19, 2001); *citing, Galaba v. New York City Bd. of Educ.*, 202 F.3d 636, 641 (2d Cir. 2000). Moreover, since plaintiff cannot show that the decision maker had knowledge of her alleged protected expression, she cannot establish this act as retaliation.

    4.    **Written counseling for unprofessional behavior was not an act of retaliation.**

Plaintiff's primary claim for retaliation stems from the June 29, 1999, written counseling for unprofessional behavior. The incident centered around attempts by the Hospital to set up a meeting with Ms. Diaz, the Chief Nursing Officer ("CNO"), and the Human Resources Director, to discuss Plaintiff's continued concerns about the Preceptor Program. The Plaintiff had contacted the secretary to the Chief Nursing Officer and advised her that she intended to bring an unidentified person to the meeting with her. The CNO asked the Director of Human Resources, Lynn Mathis, to contact the Plaintiff and request that she immediately identify the individual she intended on bringing. The Plaintiff did not respond to the request. Later, that same day, the

---

[6]     Deposition of Careen Diaz, pp. 173-74.
[7]     Deposition of Careen Diaz, p. 173, ln. 19.

WPB#536768.02     11

Human Resources Director, Lynn Mathis, called the floor where Plaintiff was working and spoke with the Plaintiff. Ms. Mathis asked the Plaintiff who she intended on bringing to the meeting and advised the Plaintiff that Hospital policy did not permit outsiders to attend. The Plaintiff refused to respond to Ms. Mathis' questions and then hung up the phone. Ms. Mathis attempted to again call the Plaintiff, but the Plaintiff refused to take her call and asked her co-workers to tell Ms. Mathis that she had clocked out and gone home. Ms. Mathis later verified that the Plaintiff was working and still clocked in when she refused to take her calls. The Plaintiff acknowledges that she intentionally refused to answer Ms. Mathis' questions. The employee who was asked to lie on behalf of the Plaintiff provided the Hospital with a written statement verifying the incident. Based upon this incident, the Plaintiff was given a written reprimand for unprofessional behavior. The written reprimand constituted nothing more than a warning that any future misconduct could lead to further disciplinary action.

Ms. Diaz filed a written grievance concerning the written counseling. The grievance raised three issues: (1) Plaintiff sought clarification on the Preceptorship Program, (2) Plaintiff requested that the write up of June 29, 1999 be purged, and (3) Plaintiff asserted that she was being retaliated against for having lodged complaints. The Chief Operating Officer, Lee Chaykin, investigated the grievance and based upon the investigation issued a memo of his findings. Mr. Chaykin met with Ms. Diaz and presented her with his findings (a) that the individuals that participated in the BCC Preceptorship Program were not paid for time spent Precepting; (b) that the write up of June 29, 1999 was appropriate and would not be purged; and, (c) that he found no evidence of perceived harassment or retaliation.

It bears noting that the written counseling constituted nothing more than a warning which could lead to disciplinary action. The plaintiff was not demoted, suspended, docked pay, denied

any opportunity or in any way disciplined as a result. As such, the counseling did not materially affect a term or condition of the plaintiffs employment such that it could not constitute and adverse action for purposes of a claim for retaliation. *See, e.g., Bennett v. Watson Wyatt & Company*, 2001 WL 267001 *7 (S.D.N.Y Mar. 19, 2001)("...reprimands, threats of disciplinary action and excessive scrutiny do not constitute adverse actions."); *Stembridge v. City of New York*, 85 F.Supp.2d 276 (S.D.N.Y. 2000)(no actionable harm where "reprimand contained a warning that repetition of improper behavior could result in disciplinary action but contained no indication of any planned discipline or further action").

Additionally, the counseling was not preceded by any protected form of expression. It was not until after Ms. Diaz was written up that she for the first time asserted that the failure to pay her for precepting was based upon her race. All prior complaints merely sought information from the hospital and an explanation. There was no intimation that her complaints or requests for information asserted a claim of race discrimination. *Webb v. R & B Holding Company, Inc.* 992 F.Supp 1382, 1389 (S.D. Fla. 1998). "It is not enough for the employee merely to complain about a certain policy or certain behavior... and rely on the employer to infer that discrimination has occurred.") Thus, since the alleged act of retaliation preceded the first possible act of protected expression, no claim for retaliation based upon the same can be maintained.

Even if Ms. Diaz can establish a prima facie claim of retaliation based upon the counseling, she cannot rebut the legitimate non-discriminatory reason for the same. Simply put the plaintiff acknowledges that the events that she was written up for actually occurred. She further acknowledges that she was written up because she intentionally refused to respond to her supervisor's questions. The plaintiffs failure to properly respond to questions posed from her supervisors and her demonstrated disrespectful behavior are legitimate non discriminatory

reasons for the action taken. *Gaston*, 129 F.Supp.2d at 1372 ("Defendant has met its burden of proffering a legitimate, nondiscriminatory reason for plaintiff's termination based on **it's view** that he had displayed a pattern of disrespectful behavior towards his fellow employees.."). Whether the write up was warranted or whether the act that led to the same actually occurred is not relevant, so long as the employer had good reason to believe that the incident occurred. *Id.*; citing *Jones v. Gerwens*, 874 F.2d 1534, 1540 (11th Cir. 1989)(quoting *Turner v. Texas Instruments, Inc.*, 555 F.2d 1251, 1256 (5th Cir. 1977)("Even if [employer] wrongly believed that [claimant] violated this policy, if [employer] acted on this belief it was not guilty of racial discrimination.")). Plaintiff's unsupported opinion that the write up was not warranted and speculation that it was thus retaliatory is immaterial and insufficient to rebut the hospital explanation for the same. *Gaston*, 129 F.Supp.2d at 1372-74. As such defendant is entitled to entry of summary judgment as a matter of law.

5. **The Suspension of January 25, 2000 was not an act of retaliation.**

On January 28, 2000, Ms. Diaz was written up for an incident that occurred on the Hospital floor on January 25, 2000, approximately six months after plaintiff's complaint that she had been subjected to racial discrimination. In accordance with the Hospital's progressive discipline plan, Ms. Diaz was suspended for a period of three days. The write-up resulted from a complaint being lodged by Wanda Fogarty, the Hospital's Director of Radiology and a designated Patient Representative.

The Hospital had implemented a program to insure patient satisfaction by designating various administrators as Patient Representatives and assigning each "Patient Rep" to patient rooms throughout the Hospital. Each Patient Rep would check in on their assigned patients and find out if their needs were being met. The Patient Reps did not provide care to patients since many were not within the nursing department.

WPB#536768.02                              14

On the date of the incident, Ms. Fogarty had been assigned to a room on the fourth floor where Ms. Diaz worked. The patient was elderly with physical restrictions, and the patient advised Ms. Fogarty that she needed to use the rest room. Ms. Fogarty proceeded to the nurse's station were she identified that the assigned nurse was Ms. Diaz. Ms. Fogarty advised her that her patient needed assistance going to the rest room. Ms. Diaz requested that Ms. Fogarty locate the PCA and have her assist the patient. Ms. Fogarty returned to the nurse's desk and inquired as to the availability of the PCA. Ms. Fogarty was advised that the PCA was not available, at which time Ms. Diaz was again paged to assist her patient. Ms. Diaz arrived in the patient room and with the assistance of Marlene McKay, assisted the patient to the rest room. While doing so Ms. Diaz in a loud and derogatory manner repeatedly stated in the presence of the patient "What is the purpose of these Patient Reps, if they are not going to do anything?" Ms. Fogarty was standing outside the patient's room speaking with a doctor and overheard the statements, which she later reported to Ms. Diaz' supervisor.

Ms. Fogarty had no prior interaction with Ms. Diaz and had no knowledge that Ms. Diaz had lodged any complaints against the Hospital for any reason. While Ms. Diaz disputes certain events relating to this incident, she does not dispute that the incident occurred.

Out the outset, the plaintiff cannot establish a causal connection between her July 1999 complaints and this act some six months later. The length of time and all intervening and preceding circumstances extinguish any causal connection as a matter of law. *See, e.g., Maniccia v. Brown*, 171 F.3d 1364, 1369 (11th Cir. 1999)(fifteen months between grievance and alleged adverse employment action is insufficient to establish causal connection); *Balletti*, 909 F.Supp. at 1549 (elapse of six months between grievance and discharge did not permit inference of causal connection); *Richmond v. Oneok, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997)(holding that a "three

month period between the [protected] activity and termination, standing alone, does not establish a causal connection"); *Gaston v. Home Depot USA, Inc.*, 129 F.Supp.2d 1355, 1377 (three month gap in time between complaints and adverse action not sufficient to establish a causal connection).

Additionally, the suspension was a result of a complaint lodged by a hospital director who had no knowledge of Plaintiff's prior "protected activity." The suspension was handled in a manner consistent with hospital policy based upon the nature of the complaint by Ms. Fogarty and Ms. Diaz cannot rebut Westside's legitimate non-retaliatory explanation for her suspension.

### III.   CONCLUSION

For the reasons as more fully stated above, the defendant is entitled to entry of summary judgment in its favor as a matter of law.

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was mailed this 23rd day of April, 2001, to Stewart Lee Karlin, Esq., 400 S.E. 8th Street, Fort Lauderdale, Florida 33316.

                              CARLTON FIELDS, P.A.
                              P.O. Box 150
                              West Palm Beach, FL 33402-0150
                              Telephone:    (561) 659-7070
                              Facsimile:    (561) 659-7368
                              Attorneys for Defendant

                              By: _____
                              Christopher C. Copeland
                              Florida Bar Number 938076
                              Alexander D. del Russo
                              Florida Bar Number 350273

# WESTSIDE REGIONAL MEDICAL CENTER
## ORIENTATION AND PRECEPTOR PROGRAM
### PROMISSORY NOTE

**EMPLOYEE NAME:** _____ **Jennifer Stephan** _____

**SPECIALTY AREA:** _____ **EMERGENCY DEPARTMENT** _____

In consideration of providing to the undersigned Orientation and Precepting Services and Educational Expenses for a eight week (8) instructional program and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the undersigned promises to pay to the order of Westside Regional Medical Center (hereinafter "payee") the following amount:

    A.    The principal sum of $5,118.00 will be prorated if the undersigned's employment with Westside Regional Medical Center is terminated voluntarily or involunatarily by the undersigned on a date prior to 24 months from the date of this note.

In the event the undersigned is employed with Westside Regional Medical Center in good standing on a date twenty-four (24) months from the date of this Note, as described above, the undersigned's obligation hereunder to pay principal and interest shall be forgiven and this Note shall be considered extinguished and fully satisfied.

The undersigned gives Payee a lien and grants a security interest for the amount of this indebtedness, upon all property and funds in which the undersigned has an interest that may, at any time, be in the possession of the Payee; and the Payee may at any time, set off any amount due, or to become due to it, by virtue of this Note against such property and amounts otherwise due to the undersigned.

The undersigned and any endorser or guarantor of the obligations of the undersigned to the Payee hereunder agree that in any one of the following events this Note and the undersigned's obligations hereunder, at the option of the Payee, shall become at once due and payable without notice, presentment or demand of payment and that Payee may thereupon, without notice immediately or at any time thereafter exercise its setoff rights hereunder and sell any and all property in which it has a lien or security interest granted herein;

    A.    The failure to pay amounts hereunder on its due date;

    B.    The insolvency, or the execution of an assignment for the benefit of creditors; or the appointment of a receiver, trustee, or custodian of the property, or the death of the undersigned or of any endorser or guarantor, or;

    C.    The filing of a petition of bankruptcy by or against the undersigned or any endorser or guarantor, or the commencement of any proceeding in bankruptcy or

000231

under any acts of Congress relating to the relief of debtors for the relief or readjustment of any indebtedness of the undersigned or of any endorser or guarantor, either through reorganization, composition, extension, or otherwise, the inability of the undersigned to meet obligations as they become due or of any endorser or guarantor to meet obligations as they become due.

The undersigned and any endorser or guarantor of the undersigned's obligations under this Note, waive presentment demand for payment, notice of dishonor, and all other notices or demands in connection with delivery, acceptance, performance, default, or endorsement of this Note.

No delay or failure on the part of the Payee to exercise any power or rights shall operate as a waiver and such rights and powers shall be deemed continuous, nor shall a partial exercise preclude full exercise; and no right or remedy of the Payee shall be deemed abridged or modified by any course of conduct and no waive thereof shall be predicated thereon nor shall failure to exercise any power or right subject the Payee to any liability.

If payment of this Note shall not be made at maturity and any action is brought to enforce collection thereof, the undersigned also agrees to pay Payee an additional fifteen per cent (15%) of the amount of indebtedness outstanding, or the maximum amount permitted under applicable law if fifteen (15%) per cent exceeds such maximum permissible rate, as attorney fees.

This agreement is not a contract of employment. All employment with Westside Regional Medical Center is for an indefinite term and employment may be terminated without cause at any time at the will of either the employee or the hospital. This status can only be altered by a written contract of employment which is specific as to all material terms and is signed by both the employee and the Chief Executive Officer of Westside Regional Medical Center.

In witness whereof, the undersigned has executed this Promissory Note as the day and year first above written.

Signature: _____  Date: 8-31-99

Name: Jennifer Stepnon
(Printed)

Social Security Number: 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

Address: 9531 Encino St.

Witness Name: Myra Myers
Signature: _____  Date: 8/31/99

000232