UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 00-6099-CIV-GRAHAM/TURNOFF

CAREEN DIAZ,

        Plaintiff,

v.

COLUMBIA HOSPITAL CORPORATION
OF SOUTH BROWARD, AND COLUMBIA
HOSPITAL CORPORATION OF SOUTH
FLORIDA,

        Defendant.
_____/

**THIS IS A CONSENT CASE**

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

1. **Introduction**

Plaintiff, COREEN DIAZ, through undersigned counsel, hereby submits the following Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment. The Court is respectfully referred to plaintiff's affidavit which is filed under separate cover and should be deemed incorporated into this memorandum of law.

2. **Factual Statement**

Plaintiff commenced suit in State Court claiming that she was discriminated against by reason of her race (African-American) and retaliation. The Court is respectfully referred to the affidavit of plaintiff which is filed under separate cover which should be deemed

1



incorporated herein for the salient facts.

## ARGUMENT

### POINT I

### DEFENDANT HAS THE BURDEN OF SHOWING THAT THERE ARE NO GENUINE MATERIAL ISSUES OF FACT

In connection with a motion for summary judgment, the Court's function is to determine whether a material factual issue exists, not to resolve any existing factual issues. United States v. Diebold Inc., 369 U.S. 654 (1962). A court may grant summary judgment under Fed.R.Civ.P. 56(c) only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Where, as here, the non-movant bears the ultimate burden to prove at trial that the defendant discriminated against plaintiff, he may defeat the summary judgment motion by procuring sufficient specific facts to establish that there is a genuine issue of material fact for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Also, the party moving for summary judgment has the burden of showing the absence of genuine issue of material fact. Weinberger v. Hynson, 412 U.S. 609 (1973). In addition, in ruling on a motion for summary judgment, a court must resolve all ambiguities and draw all reasonable inferences in favor of the party defending against the motion. Welch v. Celotex Corp, 951 F2d 1235, 1237 (11 Cir. 1992) Hoffman v. Allied Corp, 912 F2d 1379 (11th Cir. 1990), Eastway Construction Corp. v. City of New York, 762 F.2d 243, 249 (2d

Cir. 1985), cert. denied.

In assessing whether the movant has met this burden, the district court must review the evidence and all factual inferences drawn therefrom, in the light most favorable to the non-moving party. Welch v. Celotex Corp, 951 F2d 1235, 1237 (11 Cir. 1992); Rollins v. TechSouth, Inc., 951 F2d 1525, 1528 (11th Cir. 1987). If the movant successfully discharges its burden, the burden then shifts to the non-movant to establish, by going beyond the pleadings, that there exists genuine issues of material facts. Matushita Electric Industrial Co. v. Zenith Radio Corp. 475 U.S. 574, 586-87, 106 S.Ct. 1328, 1355-56, 89 L.Ed. 2d 538 (1086); Clark v. Coats & Clark, Inc. 929 F2d 604, 608 (11th Cir. 1991).

Applicable substantive law will identify those facts that are material. Anderson v. Liberty Lobby, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed. 2d 202 (1986). Genuine disputes are those in which the evidence is such that a reasonable jury could return a verdict for the non-movant. For factual issues to be considered genuine, they must have a real basis in the record. Matushita, 475 U.S. at 586-87, 106 S. Ct., at 1355-56. It is not part of the court's function, when deciding a motion for summary judgement to decide issues of material fact, but determine whether such issues exist to be tried. Anderson, 477 U.S. at 249, 106 S.Ct. at 2135. The court must avoid weighing conflicting evidence or making credibility determinations. Id, at 255, 106 S.Ct. at 2513- Instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor". Where a reasonable fact finder may "draw more than one inference from the facts, and the inference creates a general issue of material fact, then the court should refuse to grant summary judgment." Barfield v. Briertonm, 883 F2d 923, 933-34 (11th Cir.1989)

(citation omitted).

The Court have recognized that in discrimination cases, an employer's true motivations are particularly difficult to ascertain, see <u>United States Postal Service Board of Governors v. Aikens,</u> 460 U.S. 711, 716, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983) (acknowledging that discrimination cases present difficult issues for the trier of fact, as "there will seldom be `eye witness' testimony as to the employer's mental processes"), thereby making such factual determinations generally unsuitable for disposition at the summary judgment stage. <u>Lowe v. City of Monrovia</u> 775 F.2d 998, 1009 (9th Cir.1985). For summary judgment purposes one must show that the reasons articulated to terminate Ms. Brookins are in dispute or there is a factual dispute as to whether there was disparate treatment in connection with her termination.. As the Supreme Court recently stated that one only must show the legitimate reasons are not the true reasons for his termination. Put simply that in this case if the reasons for plaintiff's termination are in dispute or there is evidence of disparate treatment then summary judgment must be denied. <u>Reeves v. Sanderson Plumbing.</u> 530 U.S. 133 (2000).

## POINT II

**STANDARD OF REVIEW AND ANALYSIS OF THE SUBSTANTIVE CLAIMS (UNDER ADEA) McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 37 L.Ed.2D 668 (1973) Is Controlling Herein and <u>Reeves v. Sanderson Plumbing</u>, 2000 WL 743663 (U.S. S. Ct. June 12, 2000).**

### Introduction

In addressing itself to the "critical issue" before it in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 93 S.Ct. 1871, 36 L.Ed.2d 668 (1973), Justice Powell, writing for the

4

court stated:

The critical issue before us concerns the order and allocation of proof in private, non-class actions challenging employment discrimination. The language of Title VII makes plain the purpose of Congress to assure equality of employment opportunity and to eliminate those discriminatory practices and devices which have fostered racially stratified job environments to the disadvantage of minority citizens. Id. at 411 U.S. 800.

In the instant case, the plaintiff, is pursuing an individual non-class action suit challenging employment discrimination. Unlike McDonnell Douglas, which addressed itself to the refusal of that private corporate institution to rehire a black person, the plaintiff herein challenges the actions of the defendant party for disparate treatment and retaliation. In Texas Department of Community Affairs v. Burdines, 450 U.S. 248, 252-253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981) (quoting McDonnell Douglas), the court stated in relevant part:

> First, the plaintiff has the burden of proving by a preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, non-discriminatory reason for the employee's rejection." . . . Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

1.   **Plaintiff's Burden**

In McDonnell Douglas Corp. v. Green, supra, at 411 U.S. 792, the Supreme Court enunciated a three-prong allocation of proof requirement in the context of a private, non-class action challenging employment discrimination. It held:

5

The complaint in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of racial discrimination. This may be done by showing (i) that he belongs to a racial minority (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (v) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

One can show a prima facie case of discrimination in a variety of ways. The differences are in the fourth element. Plaintiff must show that (1) that she was a member of a protected class. 2) that she was qualified for the job; 3) that she was treated less favorably than other similarly situated employees 4) that she suffered an adverse employment action Reeves v. Sanderson Plumbing. 2000 WL 743663 (U.S. S. Ct. June 12, 2000). The burden then must shift to the employer to articulate some legitimate, non-discriminatory reason for the employer's disparate treatment.

See McDonnell Douglas Corp. v. Green, supra, at 411 U.S. 903, 804-805. This three prong test has been applied or acknowledged in many cases since its initial pronouncement. See, among others: Furnco Construction Corp. v. Waters, 438 U.S. 567, 577, S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978); Teamsters v. United States, 431 U.S. 324, 358, 97 S.Ct. 1843, 1886, 52 L.Ed.2d 396 (1977); Franks v. Bowman Transportation Co., 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976); Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248,, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); Dister v. Continental Group Inc., 859 F.2d 1108 (2d Cir. 1988); Meiri v. Dacon, 759 F.2d 959 (2d Cir. 1983).

2. **Standards Regarding Retaliation**

The opposition clause prohibits adverse action against an individual who has opposed employment practices made unlawful by Title VII or the Florida Civil Rights Act.

The test is whether the employee had complained about conduct that if true would constitute a violation of Title VII <u>Hartson v. Gainsville Son Publishing</u>, 9 F3d 913 (11th Cir. 1993), <u>Gordon v. City of Atmore</u>, 996 F2d 1155 (11th Cir. 1993); <u>Parker v. Baltimore & B.R.R. Co.</u>, 652 F.2d 1012 (D.C. Cir. 1981); <u>Nonteiro v. Poole Silver Co.</u>, 615 F.2d (1st Cir. 1980). See also, <u>Payne v. McLemore's Wholesale and Retail Stores</u>, 654 F.2d 1130 (5th Cir. 1981). Clearly, complaining orally and in writing about discriminatory treatment falls squarely within the opposition clause.

To establish a case concerning based upon retaliation, the plaintiff must by a preponderance of the evidence show each of the following four elements:

1. That plaintiff complained about protected activity under Title VII;
2. That the employer took adverse action;
3. A causal link exists between the plaintiff's protected activity and the adverse action taken by the employer;

<u>Hartson v. Gainsville Son Publishing</u>, 9 F3d 913 (11th Cir. 1993), <u>Gordon v. City of Atmore</u>, 996 F2d 1155 (11th Cir. 1993); <u>Cosgrove v. Sear Roebuck & CO.</u>, 9 F.3d 1033, 1039 (2nd Cir. 1993); <u>Parker v. Baltimore & B.R.R. Co.</u>, 652 F.2d 1012 (D.C. Cir. 1981); <u>Nonteiro v. Poole Silver Co.</u>, 615 F.2d (1st Cir. 1980). See also, <u>Payne v. McLemore's Wholesale and Retail Stores</u>, 654 F.2d 1130 (5th Cir. 1981). The burden then shifts to the employer to articulate a legitimate, specific, nondiscriminatory reason for the adverse action taken.

3. **Defendant's Burden**

   **Degree of Proof**

While the plaintiff has the ultimate burden of persuasion to prove the alleged discrimination, see Texas Dept. of Cons. Affairs v. Burdine, 450 U.S. 2489, 253, 101 S.Ct. 1089, 1981), nevertheless the defendant party is required to satisfy an intermediate burden of rebutting a prima facie case of discrimination as established by the plaintiff pursuant to and under the guidelines mandated, described and otherwise set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, S.Ct. 1817, 63 L.Ed.2d 668 (1973). Furthermore, while at first blush it would appear that Burdine, supra, requires only that appellee articulate a legitimate reason to rebut a non-discriminatory justification in response to the prima facie case, such is not precisely the obligation of the rebutting party. In that regard, the Burdine Court requires something other than mere articulation of a non-race based justification. It requires that the "defendant's explanation (articulation) of its legitimate reasons must be clear and reasonably specific." Burdine, supra, at 450 U.S. 258, 67 L. Ed. at 2d 218 (emphasis added). Explaining the reason for requiring something more than a bland articulation of legitimate, non-discriminatory justification and requiring, instead, clear and specific justification.

This obligation arises both from the necessity of rebutting the inference of discrimination arising from the prima facie case and from the requirement that the plaintiff be afforded "a full and fair opportunity" to demonstrate pretext... Plaintiff's position that something more than a bland articulation of justification/non-discriminatory reasons is necessary is supported by an analysis of pre-Burdine precedent and reflects the Supreme Court's inclusion of the language set forth in Burdine (that is, the use of the terms "clear" and "specific"). Meiri v. Dacon, 759 F.2d 959 (2d Cir. 1983).

4.  **Plaintiff's Burden or Proving Pretext**

Once the defendant has articulated a legitimate criterion in a clear and specific manner then the burden shifts to the plaintiff to prove pretext. Burdine clearly stated that in addition to directly proving a discriminatory motive, a plaintiff may prevail upon showing that the employer's given legitimate reason is unworthy of credence, that is, that the reason supplied was not the true reason for the unfavorable employment decision. Burdine, supra, 450 U.S. 972; Dister v. Continental Group Inc., 859 F.2d 1108, 1113 (2d Cir. 1988). The reason is that employers generally act for a reason and thus those who can demonstrate no legitimate reason for acting more likely than not acted for a discriminatory reason. Therefore, when the employer's non-discriminatory reason is shown to be unworthy of belief, and thus was not the real cause for the termination, the employer has in substance failed to articulate a valid explanation for discharging an employee and has placed its credibility into question. Dister v. Continental Group, supra.

In Harington v. Gainesville Sun Publishing Co., 9 F3d 913 (11th Cir. 1993) this Court reversed the District Court and held that a plaintiff's burden at summary judgment is met by introducing evidence that could form the basis for a finding of facts which taken in the light most favorable to the non-moving party could allow a jury to find that the plaintiff has established pretext. In other words, the employer's proffered explanations is not credible or is unworthy of credence. The plaintiff can also show that a discriminatory reason likely motivated the employer in its employment decision. See also Batey v. Stone, 24 F3d 1330 (11th Cir. 1994) indicating that if a genuine factual dispute exists as to the preferred reason, summary judgement is inappropriate. In Howard v. BP Oil Co., 32 F3d

520 (11th Cir. 1994) held that plaintiff's burden on summary judgement is merely creating a factual issue as to the truthfulness of the defendant's proffered explanation. See also <u>Cooper-Houston v. Southern Railway Co.</u>, 37 F3d 603 (11th Cir. 1994). The Supreme Court recently spoke on the shifting burdens. For summary judgment purposes one must show that the reasons articulated to discipline plaintiff and lower her evaluation are in dispute. Accordingly, plaintiff may do this by showing that the legitimate reasons are not the true reasons for the conduct or there is a factual dispute as to disparate treatment in connection with her termination. <u>Reeves v. Sanderson Plumbing</u>. 530 U.S. 133 (2000).

## POINT IV

### THERE ARE SUBSTANTIAL MATERIAL ISSUES OF FACT IN DISPUTE REGARDING RACE DISCRIMINATION AND RETALIATION

In reviewing the granting of summary judgment, the Court must view the evidence in a light most favorable to the plaintiff. <u>Sweat v. Miller Brewing Company</u>, 708 F2d 655 (11th Cir. 1983).

Plaintiff's affidavit sets forth with specificity the hostile work environment and disparate treatment and retaliation which lead her to leave her employment. She worked without incident as a patient care assistant and a registered nurse and was highly regarded. However, in a highly improbable coincidence, after she went up the chain of command to try to get an explanation for the difference in treatment between plaintiff and two Caucasian nurses regarding the preceptor program, her performance apprisal was lowered with obvious inconsistencies, her work was closed monitored, she became

isolated from her peers, and she was given two disciplinary actions including a suspension which did not follow normal protocol since she never received a verbal counseling first. She was treated differently regarding the suspension. Further in a direct admission of a retaliation and prediction of what was going to occur in the future, the Chief Operating Officer threatened that Ms. Diaz needed to be a "team player" in response to her serious inquiry of race discrimination.

Plaintiff became aware that two Caucasian nurses (plaintiff is African-American) were paid for their preceptorship while plaintiff was not paid and in fact had to pay tuition. Plaintiff inquired informally with her supervisor and then proceeded to go up the chain of command in effort to find out the reason for the unequal treatment. Eventually this lead her to the Chief Financial Officer of the Hospital. Only after her initial inquiries about the unequal treatment and her inability to get a "straight answer" was she compelled to go up the chain of command, over her supervisors to the highest level management at the hospital. In fact, in June, 1999, she was still advised that the program at the hospital was done on a "case by case" basis by the Director of Nursing.

Plaintiff detailed with specificity what occurred regarding her first disciplinary action. However, the hospital tool the position, probably for the first (and last) time that it was more important for plaintiff to come to the telephone (since Mathis had called plaintiff about five times and allegedly paged her at least three times solely to discover if plaintiff was bringing an attorney to the meeting in which she had already advised Ms. Jurat that she was not) as opposed to attending to a patient who was receiving blood transfusion and was at risk for having a reaction to it. The hospital in its infinite wisdom felt compelled to

issue a disciplinary action at precisely the same time she was complaining about race discrimination. Thus, the causation regarding time cannot be an issue since plaintiff was still in the process of complaining when the retaliatory action had occurred.

The meeting with the Chief Operating Officer can only be described as a sham since plaintiff was never interviewed prior to the meeting and he had already had his determination made prior to the meeting which calls into question why have the meeting in the first place if a determination has already been made. The only possible reason to have the meeting would be to have the second highest official in the hospital threaten her by stating that she better be a team player. This obviously is a direct threat and can only be considered a candid admission of retaliation if her complaining did not stop by highest management at the hospital. Clearly, an unambiguous message was sent and based on the circumstances sent to her supervisors as well.

Thereafter, plaintiff retained counsel and forwarded a letter complaining about the retaliatory conduct. (Exhibit "10" to plaintiff's affidavit). On the heals of this letter, the next act of retaliation occurred with the biased evaluation. As the Court can gleam from the first evaluation, the comments were all favorable, particularly her interpersonal skill and Westside Winnning Ways were rated a 3 and her team work was complimented.(see pages 16 and 17, 98 Evaluation of Exhibit 9 of plaintiff's affidavit.) However, in another striking coincidence her interpersonal skill were lowered to a 1.8 with her attitude being given a 1. (see pages 15,16 ,17, 18 and 19 of the September,99 Evaluation of Exhibit 9 of plaintiff's affidavit.) This confirms that the message was sent by the Chief Operating Officer that plaintiff was no longer considered a team player.

In addition, plaintiff gave specific examples of disparate treatment and how her work was always monitored such as auditing her charts more frequently. Why was plaintiff's charts be audited more frequently after her complaints. If one applies logic, one think that the frequency of the audits would decrease slightly as plaintiff gain experience as nurse. However, plaintiff detected a substantial increase in audits after she complained about the preceptor program.

Plaintiff also noticed monitoring in other ways. For example, she noticed frequent visits from administration were occurring. In fact, they were occurring so frequently, a coworker and registered nurse felt compelled to respond to the unusual interest that plaintiff had generated by commenting that she must have done something to have her be watched so closely.

Another example of monitoring that took place was that supervisors would clock her to see how fast she responded to a call light but did not do the same for other registered nurses. One cannot over emphasize that the job of a nurse is difficult enough without the extra burden that plaintiff now had to carry knowing that she was being watched for any mistake made.

Plaintiff was not allowed to chart by the nurses station and was told to leave. However, five minutes later, a coworker was allowed to work at the nurses station. Put simply, plaintiff was told that she could not work in a particular area while other nurses who did not complain about discrimination were allowed to work in the area.

Plaintiff's job assignments with respect to hurricane coverage was suddenly changed without any explanation.

13

Finally, the incident which led to her suspension which is set forth with a great deal of specificity and will not be repeated here. However, the Court should note the following that allegedly plaintiff's supervisor was present but she did not report the incident but only wrote a statement about a week later when requested to do so. If plaintiff somehow violated a conduct code which was serious enough to suspend her for three days, how come plaintiff's supervisor did not immediately write her up and report plaintiff. Further, besides the obvious factual dispute, plaintiff has cited three examples, (and there are numerous other examples) of nurses complaining in the presence of patients without any discipline whatsoever.

Because of the stress created by the hostile work environment, plaintiff began suffering from a number of aliments such as depression, migraine headaches, and irritable bowel syndrome. Going to work became an ordeal. She was waking up in the middle of night and was losing the ability to function as a person. Plaintiff felt under the circumstances that she had no other choice but to resign.

Clearly under the standards set by **Reaves**, summary judgment must be denied since in the record the reasons for the disparate treatment are in dispute, there is direct evidence of retaliation and there are numerous examples of retaliatory disparate treatment.

## CONCLUSION

Plaintiff respectfully submits that the summary judgment be denied in its entirety.

Dated: Fort Lauderdale, Florida
       May 18, 2001

Respectfully submitted,

STEWART LEE KARLIN, ESQ.
Attorney for Plaintiff
400 Southeast Eighth Street
Fort Lauderdale, Florida 33316
(954) 462-1201
Fla. Bar No.: 961159

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished by First Class Mail to: Alexander D. Del Russo, Esq., CARLTON, FIELDS, WARD, EMMANUEL, SMITH & CULTER, P.A., P.O. BOX 150, West Palm Beach, Florida 33402-0150, on this 18th day of May, 2001.

STEWART LEE KARLIN, ESQ.
400 S.E. 8 Street
Fort Lauderdale, Florida 33316
(954) 462-1201