

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

CASE NO. 00-6099-CIV-GRAHAM
Magistrate Judge: Turnoff

CAREEN DIAZ,

    Plaintiff,

v.

COLUMBIA HOSPITAL CORPORATION
OF SOUTH BROWARD,

    Defendant.
_____/

**DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT**

The Defendant, COLUMBIA HOSPITAL CORPORATION OF SOUTH BROWARD, d/b/a WESTSIDE REGIONAL MEDICAL CENTER ("Westside") hereby submits this Reply Memorandum of Law in Support of its Motion for Summary Judgment. Because Plaintiff has failed to establish the existence of a triable issue of material fact on her claims for race discrimination and retaliation, Westside is entitled to summary judgment.

**1. SUMMARY JUDGMENT STANDARD AND BURDEN OF PROOF**

"Though plaintiffs often argue, as they do here, that summary judgment should be rarely granted in employment discrimination cases, the truth is that summary judgment is not at all rare in such cases." *Langston v. Carroway Methodist Hospital of Alabama, Inc.*, 840 F. Supp. 854, 863 (N.D. Ala. 1993), *citing Early v. Champion International Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990). And while the appropriate standard for reviewing summary judgment motions, and for the application of the burden-shifting analysis, should not be in dispute, Plaintiff has



WPB#538166.01

mischaracterized Defendant's burden once a *prima facie* case is established. At that point, the employer's burden to proffer a non-discriminatory reason for its actions is one of production, not of persuasion, and thereafter "if a plaintiff does not offer sufficient evidence to create genuine issues of material fact regarding whether each of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment." *Chapman v. AI Transport*, 229 F.3d 1012 (11th Cir. 2000). The Plaintiff cannot rely on her *prima facie* case to survive summary judgment; at the least, she must offer sufficient evidence to reject the employer's explanation. *Reeves v. Sanderson Plumbing Products, Inc.*, 120 S. Ct. 2097, 2109 (2000).

## 2. PLAINTIFF'S DISPARATE TREATMENT CLAIM

Summary judgment is appropriate on Plaintiff's claim for race discrimination (1) because she cannot identify any similarly situated co-workers who were treated differently, and (2) because she cannot rebut Westside's explanation for why subsequent nursing graduates were paid for their internship. In fact, Plaintiff fails to address the claim for race discrimination in her Memorandum of Law or her 10-page Declaration. Thus, this claim may be deemed abandoned by her failure to respond. *See Fehlhaber v. Fehlhaber*, 702 F.2d 81, 84 (5th Cir. 1983) (issue abandoned by failure to address in response to summary judgment motion). At the least, Plaintiff has failed to establish the existence of any issue of material fact to preclude entry of summary judgment.

## 3. PLAINTIFF'S RETALIATION CLAIM

Plaintiff has failed to address the elements necessary to establish her claim for retaliation, and specifically how the actions of Westside qualify as "adverse employment actions." Instead, Plaintiff asserts that retaliation can be established by a series of events which occurred within the workplace. In her citation-free analysis, Plaintiff suggests that the various acts of alleged

retaliation--the close monitoring of her work, the review of patient charts, the feeling of isolation from her peers, the failure to include her in the hurricane plan--each of which individually do not qualify as adverse employment actions, can be viewed collectively to create a "hostile environment" in retaliation for Plaintiff's complaint of disparate treatment.

The problem with this argument is that Plaintiff has not asserted a claim for hostile work environment based on race. Her claims are for race discrimination and for retaliation. Unlike a hostile environment claim, where the alleged conduct may be viewed cumulatively, a claim for retaliation requires that each act of alleged retaliatory conduct be reviewed to see if it qualifies as adverse action. Plaintiff cannot aggregate a variety of acts, each of which do not qualify as "adverse employment actions," in order to bootstrap them into a retaliatory claim.

### 1.   6/99 Written Counseling for Behavior

On June 29, 1999, Ms. Diaz was given a Corrective Counseling for unprofessional behavior. A copy is attached as Exhibit 14 to the deposition of Plaintiff, and additionally has been attached as Exhibit "1" to this Reply Memorandum for the Court's convenience. It is undisputed that Plaintiff was never docked any pay, suspended, transferred or suffered any loss of benefits as a result of this Counseling. Yet Plaintiff claims that the Counseling was an act of retaliation. To qualify as such, Ms. Diaz must establish that (1) she engaged in protected expression, (2) she suffered an adverse employment action, and (3) there is a causal link between the two events. Ms. Diaz cannot meet these first two requirements.

At the outset, there is no evidence in the record that the Corrective Counseling was preceded by any form of protected expression by the Plaintiff. Prior to its date, the complaints by Plaintiff only sought information from the Hospital and an explanation as to why she had not been paid for her participation in the preceptor program. Her complaints were never

characterized as disparate treatment based upon race. In Plaintiff's Declaration, she attaches as Exhibit 1 her initial complaint to the hospital management concerning why she was not paid for the preceptor program. At no time does she make any mention of race as a basis for her complaint. The complaint does not even identify the "two newly appointed Registered Nurses [who] were paid during their internship" as Caucasian or African-American.[1]

Even in her Written Grievance submitted to protest the Corrective Counseling,[2] she <u>still</u> does not raise the issue that failure to pay for her precepting was based upon her race. As she stated, "all I wanted was to have one question answered regarding the hospital's policy on Internship," and she characterizes the Corrective Counseling as retaliation "because I questioned the Internship Policy." As Judge King recently observed,

> The employee must, at the very least, communicate her belief that discrimination is occurring to the employer. It is not enough for the employee to merely complain about a certain policy or certain behavior . . . and rely on the employer to infer that discrimination has occurred.

*Webb v. R & B Holding Company, Inc.*, 992 F. Supp. 1382, 1389 (S.D. Fla. 1998).

Of equal import, the Corrective Counseling does not, as a matter of law, constitute an adverse employment action necessary to support a claim for retaliation. An adverse employment action is conduct that alters the employee's compensation, terms, conditions or privileges of employment. *Gupta v. Florida Board of Regions*, 212 F.3d 571, 587, (11th Cir. 2000). Conduct that falls short of an ultimate employment decision must meet "some threshold level of substantiality . . . to be cognizable under the anti-retaliation clause." *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1456 (11th Cir. 1998).

---

[1] In paragraph 6 of her Declaration, Plaintiff's self-serving statement that Lynn Mathis "clearly understood that I was concerned that I may have [been] discriminated against because of my race" is nothing more than her own speculation, and thus insufficient to create an issue of fact.
[2] *See* Exhibit 17 to Plaintiff's Deposition, and Exhibit 7 to Plaintiff's Declaration.

Recently, the Eleventh Circuit has addressed this issue directly and held that a written counseling, even when placed in an employee's personnel file, does not rise to the level of an adverse employment action. In *Davis v. Town of Lake Park Florida*, 245 F.3d 1232 (11th Cir. 2001), a city police officer alleged he suffered an adverse employment action based upon two corrective performance reviews placed in his personnel file. They described his behavior as "unacceptable" and warned that "performance of a like nature may result in other departmental actions." *Id.* at 1236. The *Davis* plaintiff did not suffer any reduction in salary or benefits, or any denial of promotions or changes in his position, yet he filed a Title VII claim based upon race. In affirming the trial court's entry of judgment as a matter of law for the employer, the Eleventh Circuit held that these corrective counseling did not rise to the level of an adverse action.

> We therefore hold that to prove adverse employment action in a case under Title VII's anti-discrimination clause, an employee must show a *serious and material* change in the terms, conditions, or privileges of employment. Moreover, the employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances.

Id. at 1239 (emphasis original.)

The facts of *Davis* are indistinguishable from the case at bar. Ms. Diaz received her corrective counseling for refusing to answer the telephone calls of a senior manager and, as with the *Davis* plaintiff, was advised that "further infractions of hospital policy . . . will result in progressive disciplinary action." Also like the *Davis* plaintiff, Ms. Diaz did not suffer any loss of salary or benefits, any denials of promotions or transfers, or other changes in her position. Ms. Diaz claims the Corrective Counseling was both "embarrassing" and "tarnishing an otherwise perfect personnel file." *See* Declaration ¶ 10. In *Davis* this was held insufficient to

constitute an adverse action. "An employee who receives criticism or negative evaluation may lose self-esteem and conceivably may suffer a loss of prestige in the eyes of others who come to be aware of the evaluation . . . but the protection of Title VII simply do not extend to "everything that makes an employee unhappy." *Id.* at 1242.

Unable to meet these *prima facie* requirements of retaliation, Ms. Diaz is left only with the temporal proximity between her initial complaints and the Corrective Counseling. This is never enough to survive summary judgment. *See Contreras v. Suncast Corp.*, 237 F.3d 756, 765 (7th Cir. 2001) ("absent other evidence of retaliation, a temporal relation is insufficient evidence to survive summary judgment").

### 2. Excessive Scrutiny/Monitoring of Plaintiff

In addition to the Corrective Counseling and her suspension, Ms. Diaz portrays a variety of actions by various managers as events of retaliation. These include:

- Monitoring her work more closely
- Failing to assign her to the Hospital's hurricane plan
- Being told by the Chief Operating Officer that she needed to be a "team player"

Yet as with the Corrective Counseling, none of these actions resulted in a tangible detriment to her employment. For the reasons stated in Westside's Memorandum of Law, and under the controlling authority of *Davis*, they cannot qualify as adverse employment actions.

### 3. September 1999 Performance Evaluation

In her Memorandum of Law, Ms. Diaz raises for the first time the claim that her September 1999 evaluation was also an act of retaliation. *See* Plaintiff's Memorandum of Law, at p. 12. Her September 1998 evaluation gave her an overall rating of a 2.87,[3] but her September

---

[3] *See* Exhibit 6 to Plaintiff's deposition, and Exhibit 9 to Plaintiff's Declaration.

1999 evaluation gave her an overall rating of 2.58.[4] Plaintiff concedes that she received a raise in connection with this evaluation[5] and thus suffered no tangible job detriment as a result of this marginal drop in her overall evaluation. While Ms. Diaz may feel her evaluation should have been higher, the evaluation itself cannot qualify as an adverse employment action. *See Davis v. Town of Lake Park, Flo*rida, 245 F.3d at 1242.

Of greater import, her attempt to portray this evaluation as retaliatory fails because the evaluation was not done by one of the supervisors whom she claims retaliated against her:

> Q    Tell me as best you can who was it as the hospital that specifically took actions that were retaliation against you.
>
> A    It started with Mrs. Mathis and then going back to the chain of command. Actually it was from Mrs. Mathis, then the next one was I spoke to Lee Chaykin, who listened to my grievance, and then the second one was Lynn Mathis with Sue Wakat, and regarding patient rep, and then my grievance was heard by Mr. Chaykin.
>
> Q    So you mentioned Ms. Mathis, Mr. Chaykin and Ms. Wakat?
>
> * * *
>
> A    Yes, sorry
>
> Q    Anyone else that you believe retaliated against you from Westside?
>
> A    No. . . .[6]

Both the 1998 and 1999 evaluations were done by Plaintiff's charge nurse, Marlene McKay. Ms. McKay said she prepared both evaluations, including the specific references on Page 15 dealing

---

[4] *See* Exhibit 21 to Plaintiff's deposition, and Exhibit 10 to Plaintiff's Declaration.
[5] Plaintiff's deposition, p. 174, l. 19.
[6] Plaintiff's deposition, p. 138.

with Plaintiff's Interpersonal skills and the drop in these ratings.[7] Ms. McKay then explained why she lowered Plaintiff's evaluation, particularly in terms of her interpersonal skills:

> Q   Now, there was a drop in interpersonal skills and they discussed that a little bit. Was there a reason why her rating went down from one year to the next?
>
> A   Yes, there was a reason.
>
> Q   What was the reason?
>
> A   Her attitude had deteriorated I should say. At the nurse's station she would pass comments. She also had problems with some of the members of the staff, not everybody, that she didn't get along with some of the members of the staff.[8]

Accordingly, this latter evaluation cannot constitute an act of retaliation since it was not an adverse employment action and, in any event, the action was taken by someone other than the supervisors whom Plaintiff alleges retaliated against her.

### 4.   1/28/00 Suspension

On January 28, 2000, Plaintiff received a three-day suspension for unprofessional behavior. A copy of this written suspension is attached as Exhibit 28 to Plaintiff's deposition, and additionally has been attached as Exhibit "2" to this Reply Memorandum for the Court's convenience. Plaintiff claims this suspension was a further act of retaliation.

In her Memorandum of Law, Plaintiff fails to address the 6-month lapse of time between her complaint and the suspension. She cannot address the fact that the Director who initiated the complaint, Wanda Fogarty, worked in a different department (Radiology) and had no knowledge

---

[7] 4/10/01 Deposition of Marlene McKay, p. 22.
[8] 4/10/01 Deposition of Marlene McKay, p. 24.

WPB#538166.01                                     8

that Plaintiff had previously engaged in any protected activity.[9] Instead, Plaintiff suggests that Ms. Fogarty "must have known since she was very good friends with Lynn Mathis and Nurse Manager Wakat." *See* Declaration of Coreen Diaz, ¶ 15. Ms. Diaz's belief as to what Ms. Fogarty "must have known" does not constitute record evidence sufficient to create an issue of material fact.

Plaintiff suggests that the suspension "did not follow normal protocol since she never received a verbal counseling first," but this is contrary to the record before this court. Mr. Chaykin testified that under the progressive discipline policy, suspension was the next step following Plaintiff's earlier written counseling.[10] The suspension was consistent with hospital policy, and Plaintiff cannot bring forth any evidence to show otherwise.

In a final attempt to show pretext, Plaintiff suggests that her own supervisor did not report the incident herself. Ms. Diaz suggests that if her conduct was so egregious, why did not her supervisor report the incident for suspension. *See* Plaintiff's Memorandum of Law at p. 14. What Ms. Diaz neglects to mention is that her Supervisor, Marlene McKay, testified that she felt Plaintiff's behavior was inappropriate,[11] that she verbally counseled her for her behavior[12] and that she agreed with this suspension.[13]

Clearly, Ms. Diaz cannot bring forth any evidence to suggest that the hospital's explanation for the suspension was pretextual and unworthy of belief.

Based upon the foregoing, Westside requests that this Court enter summary judgment on all claims asserted by Plaintiff.

---

[9] Affidavit of Wanda Fogarty, ¶ 6.
[10] 4/10/01 Deposition of Lee Chaykin, p. 35, l. 20.
[11] April 10, 2001 Deposition of Marlene McKay, p. 27, l. 15.
[12] *Id.*, p. 31.
[13] *Id.*, p. 26.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was mailed this 24th day of May, 2001, to Stewart Lee Karlin, Esq., 400 S.E. 8th Street, Fort Lauderdale, Florida 33316.

CARLTON FIELDS, P.A.
P.O. Box 150
West Palm Beach, FL 33402-0150
Telephone:   (561) 659-7070
Facsimile:   (561) 659-7368
Attorneys for Defendant

By: _____
Alexander D. del Russo
Florida Bar Number 350273

# Westside Regional Medical Center

**COUNSELING / CORRECTIVE DISCIPLINE RECORD**

This form is to be used to record ALL details of a session during which an employee is instructed by a supervisor that a change in behavior is necessary.

| Employee Name | Department | Job Title | Date of Occurrence |
|---|---|---|---|
| Coveen Brown-Diaz | Nursing - 4th | RN | 6.29.99 |

**Detailed explanation of reason(s) for discussion.** (Include what action was wrong and why it cannot continue.)

At 7:00p Coveen hung up on the HR Director. Between 7:10 pm and 7:30 pm Coveen refused to take the calls of the HR Director. Coveen was paged x3, refused to answer. At 7:40 the HR Dir finally spoke to the employee - when asked why she did not answer pages she stated she clocked out and was trying to go home to her son. Kronos confirmed Coveen clocked out at 7:36 pm. 3 employees verbally confirmed Coveen refusing the calls. (see attached)

**Instruction given to employee to correct action**

**Anticipated supervisory action if act continues**

Further infractions of hospital (personnel or departmental) policy will result in progressive disciplinary action.

| ACTION TAKEN | ☐ VERBAL REPRIMAND | ☒ WRITTEN REPRIMAND | Suspension - Beginning date ☐ YES | Return to work Time / Day | Report To |
|---|---|---|---|---|---|

Failure to change behavior as indicated, or involvement in other situations requiring formal discussion, may result in disciplinary actions, including suspension without pay or discharge, depending on the nature of the situation.

Supervisor's Signature / Date 6/30/99

A copy of this document will be placed in my personnel file. If I improve on this act within the necessary period, this notice will not be used in further disciplinary sessions with me, unless the violations are related. I understand that I have the right to appeal through formal grievance procedure. My signature indicates I have received a copy of this form.

**Employee remarks**

000122

Employee Signature / Date / Witness Signature (employee refused to sign) / Date 6/30/99

Coreen's actions were negligent and conduct detrimental to customer service, contrary to the hospital's best interest.

*[signature] 6/30/99.*

## ___ial Medical Center

**COUNSELING / CORRECTIVE DISCIPLINE RECORD**

This form is to be used to record ALL details of a session during which an employee is instructed by a supervisor that a change in behavior is necessary.

| Employee Name | Department | Job Title | Date of Occurrence |
|---|---|---|---|
| Coreen Brown-Diaz | 614 | RN | 1/25/00 |

Detailed explanation of reason(s) for discussion. (Include what action was wrong and why it cannot continue.)

Failure to maintain a professional work environment and exhibiting behavior which is contrary to the Hospital's best interests. Specifically, on 1/25 Coreen made a comment about a pt. rep. to the effect that - "what is the point of these reps. if they are not going to do anything? (continuing) I am serious, what is the point of these pt. reps. When question by myself as to whether she made these statements, Coreen admitted she had. This undermines the mission of the Hospital to promote pt. satisfaction. Conduct that interferes with operations, discredits the Hospital or is offensive to patients or fellow employees will not be tolerated.

Instruction given to employee to correct action:

Refrain from unprofessional conduct or any conduct that interferes with operations, discredits the Hospital, is contrary to the Hospital's best interests or is offensive to patients or fellow employees. Conduct self in a manner so as to promote the best interests of the hospital.

Anticipated supervisory action if act continues:

Any further infraction of departmental or personnel policy will result in progressive disciplinary process.

K. Mullan 1/20/00

| ACTION TAKEN | VERBAL REPRIMAND | WRITTEN REPRIMAND | Suspension - Beginning date ☒ YES 1/28/00 | Return to work Time / Day 2/1/00 | Report To 4th Flr |
|---|---|---|---|---|---|

Failure to change behavior as indicated, or involvement in other situations requiring formal discussion, may result in disciplinary actions, including suspension without pay or discharge, depending on the nature of the situation.

Any further infraction of departmental or personnel policy will result in progressive disciplinary process

Supervisor's Signature: Ju Wakiten   Date:

A copy of this document will be placed in my personnel file. If I improve on this act within the necessary period, this notice will not be used in further disciplinary sessions with me, unless the violations are related. I understand that I have the right to appeal through formal grievance procedure. My signature indicates I have received a copy of this form.

Employee remarks:

DEFENDANT'S EXHIBIT 28 10/27/00 BDS

Employee Signature: _____ Date: 1/28/00

Witness Signature (employee refused to sign): Employee chose not to sign   Ju Wakiten RN 1/28/00

17051