**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 00-6099-CIV-GRAHAM/TURNOFF**

NIGHT BOX
FILED

JUN - 1 2001

CLARENCE MADDOX
CLERK, USDC / SDFL / MIA

CAREEN DIAZ,

        Plaintiff,

v.

        **THIS IS A CONSENT CASE**

COLUMBIA HOSPITAL CORPORATION
OF SOUTH BROWARD, AND COLUMBIA
HOSPITAL CORPORATION OF SOUTH
FLORIDA,

        Defendant.

_____/

**JOINT PRE-TRIAL STIPULATION**

**I.    CONCISE STATEMENT OF THE NATURE OF THIS ACTION**

    This action seeks declaratory, injunctive and equitable relief; and compensatory damages; and costs and attorney's fees for alleged race discrimination and retaliation allegedly suffered by plaintiff, COREEN DIAZ.

**II.    BASIS OF FEDERAL JURISDICTION:**

    This action seeks declaratory, injunctive and equitable relief; liquidated, and compensatory damages; and costs and attorney's fees for alleged race discrimination and retaliation. This civil action is brought by the plaintiff pursuant to 42 U.S.C. 1981. This court has jurisdiction over this action under 28 U.S.C 1331 and 1343 (3). Venue is invoked pursuant to 28 U.S.C. 1391 in that the alleged conduct occurred within this district.



### III.    STATEMENT OF THE CASE:

### A.    Plaintiff

Plaintiff commenced suit in State Court which was subsequently removed claiming that she was discriminated against by reason of her race (African-American) and retaliation. While completing her studies as a Register Nurse at Broward Community College (BCC), she began employment at West Side Regional Medical Center in January 1997. Plaintiff started working there as a Patient Care Assistant (PCA) on a per diem basis (will call). In May of 1997, plaintiff graduated from BCC and received her associates degree in nursing.

A few weeks after graduation, plaintiff notified Eileen Ciotti, the Nurse Manager of the fourth floor where she was assigned to work.  Mrs. Ciotti informed her that after plaintiff obtained her license as a Registered Nurse that she could start employment at West Regional Medical Center as a full time RN.  Then approximately one month later, Mrs. Ciotti notified her that the hospital does not grandfather in new nursing students anymore.  (Grandfathering in means a senior nurse is assigned to preceptor a brand new nurse for a specified period of time and that new nurse would develop her skills to perform daily functions as a Registered Nurse and would receive pay for that period of time).

Instead it was stated to plaintiff that even though she was an employee of the facility, she was told that she had to participate in a new program that the hospital was initiating with BCC if she wanted to be employed there as a full time staff RN. This program requires plaintiff to pay for tuition costs as well as not receive any pay for the duration of the preceptor-internship. Plaintiff would be assigned to a senior staff nurse and have him or her preceptor plaintiff for a period of 8-10 weeks at the facility to develop the basic skills needed to function as a Registered Nurse.  Since that was plaintiff's only option , she completed the preceptor-internship without

2

incidence in October of 1997 and started full-time employment as a RN at West Side Regional Medical Center.

In the spring of 1999, Plaintiff was preceptoring a new RN, Michelle Puckett, (Caucasian) who stated to her that she was getting paid for her internship. Around the same time it was brought to her attention that two other new nurses were paid while preceptoring. In addition, these two nurses (Donna Bocella and Jennifer Stefan-Caucasian) started there employment at West Side Regional Medical Center as PCA's (towards the end of 1997). After receiving their RN Licenses they were hired as full-time employees (RN's) and they were each preceptored by a staff nurse however they were paid for their preceptorship.

Plaintiff, first approached the current Nurse Manager of the fourth floor, Sue Wakat, and asked her "why was I treated differently?" She basically did not give a reply and that is when plaintiff wrote a letter to the Director of Human Resources, Lyn Mathis and to the Chief Nursing Officer, Kim Jutras, addressing her concerns and asking them what is the policy of the hospital regarding internship-preceptorship. Towards the end of May, plaintiff had a meeting with the director of Human Resources, Lyn Mathis and voiced her concerns about the difference in treatment between herself and the two Caucasian nursed involved. She clearly understood that plaintiff was rasing the issue of discrimination because of plaintiff's race, African-American. Plaintiff inquired about the policy regarding preceptorship-internship. At that point, Mrs. Mathis stated that she was comparing oranges to apples and that she would look into it. On June 2, 1999, plaintiff received an e-mail from Mrs. Mathis informing her that D. Bocella and J. Stefan did not go through a formal program but an extended orientation program. Plaintiff responded to Mrs. Mathis by e-mail by again asking her for the paper work regarding the policy of the hospital. The next e-mail plaintiff received from Mrs. Mathis stated that the decision to use an extended orientation and BCC program is made on a "CASE BY CASE BASIS". Plaintiff followed up on Mrs. Mathis' e-mail by repeatedly asking her what criteria is used to determine who gets paid for the

3

internship-preceptorship and that she would like to see the policy. With no response forthcoming from Ms. Mathis, plaintiff asked for a meeting with the Chief Nurse  Kim Jutras.

On June 29. 1999, plaintiff was notified by Mrs. Jutras secretary that the meeting was set for July 1, 1999 and they needed a time that she would be available. In mid afternoon, plaintiff got a call at the nurses station form the CNO, and she asked plaintiff the same question was plaintiff bringing an attorney to the meeting?  She proceeded to tell her no that she hopes that this have not reached that level.

Towards the ending of the same day when things were most chaotic, plaintiff was trying to finish work and preparing for the next shift to come in. Mrs. Mathis called her one more time at the nurse's station. This particular time she  could not  talk with Mrs. Mathis as she was in a patient's room initiating a blood transfusion.  Pursuant to hospital policy when a patient is receiving a product, if they are going to have a adverse reaction or an allergic reaction to the blood it usually occurs within the first 15 minutes of the transfusion, therefore she could not leave the patient.

Later on that day, the next shift is waiting for plaintiff to report off. This means for plaintiff to give them the pertinent information about her patients so they can provide care to them such as why the patient was admitted, lab abnormalities, surgery, heart problems etc.) Sometimes giving a report can take as long as forty-five minutes to an hour depending on how many patients are on the wing. Plaintiff was starting to give her report, and plaintiff was interrupted again by Mrs. Mathis. This time she was hostile, she went on to say that" she needed a response on whether she was going to bring an attorney to the meeting. She needed to know by noon on June 30, 1999, or there was not going to be a meeting. Plaintiff previously told Ms. Mathis that she was not bringing an attorney and had not even retained one yet.  It appeared rather obvious that Ms. Mathis was retaliating against plaintiff at this point due to her extraordinary hostile attitude. She had called about five times.   Plaintiff had been interrupted from patient care to respond to this

4

issue. She told Mrs. Mathis that she will talk with her in the morning.  Plaintiff was never rude to Ms. Mathis nor did she hang up on her.  After finishing the report, plaintiff documented on a few charts and then left the hospital.

On the very next day, June 30, 1999, plaintiff was escorted downstairs by her Nurse Manager, Wakat to the Director of Human Resources office.    Mrs.Mathis handed  a discipline report to plaintiff.    The discipline report was solely done in retaliation due to the fact that she was not satisfied with the meeting she had with Mrs. Mathis and went to the next person in the chain of command which was the CNO K. Jutras raising the spector that she may have been discriminated against due to the unequal treatment concerning the preceptor program.  This hostility is documented by the number of times Mrs. Mathis called the nurses station on the one day in an attempt to somehow force an answer out of plaintiff.

Plaintiff  filed a grievance form in July or August, 1999.  A meeting was held between herself and Mr. L. Chaykin (COO) of West Side Regional Center to discuss her grievance. Mr.Chaykin proceeded to hand plaintiff a pre-typed letter and read it to her.  He did not answer plaintiff's primary question about the policy governing preceptor ship at West Side Regional.  He stated that his findings corroborate the disciplinary action. Regarding the harassment, Mr. Chaykin stated that there was no evidence to harass or threaten or intimidate plaintiff.    However, Mr. Chaykin acknowledged that he did not interview the two witnesses that plaintiff  gave a report to and the unit secretary that The Human Resource department wanted to prepare a false statement (e-mail) from E. Wimbley.   He eventually stated that Plaintiff need to be team player (referencing her complaints of discrimination) and what was going to be her next move?  In addition M. Chaykin stated "there is no hospital policy regarding preceptor ships.

In the months to come, plaintiff noticed that her work was monitored more closely and  that  there were more frequent visits to the floor from administration.  On one particular day there was a hurricane alert and employees have to come in at there designated time and other

5

beach side hospitals move their patients and staff further west. Plaintiff's assigned duty prior to her complaining was to assist the relief charge nurse. When plaintiff reported for duty everyone else's assignment was the same but plaintiff was reassigned to a less desirable task.    In addition, her evaluation was lowered from the previous year, Upon close examination, this evaluation is contradictory and retaliatory.

Another event was K. Jutras and S. Wakat were at the nurses station looking at the assignment board, which tells you what nurse is assigned to what room. Plaintiff was in a room in back of the nurses station and she could hear them saying well pick one of her rooms. Not more than a few minutes later a call light went off in a room at the end of the corridor that she just discharged a patient from. As she approached the room, plaintiff heard them asking where is the patient and that's is when plaintiff entered the room and the both of them were standing there seeing how long it would take her to answer the light. Plaintiff watched them to see if they were going to perform that test on any of my fellow employees and they did not. Both of them proceeded to go into the elevator. This was an example of how closely she was being monitored while other nurses who did not complain about discrimination were not monitored. It should be noted that her attorney had written a letter in the fall and suit had been commenced in January, 2000.

There is an area of the nurses station where we can chart on patients and the Nurse Manager approached her and told her that she can no longer chart there. Not more than five minutes later, a coworker started charting there and nothing was said to her. Further evidence of retaliatory conduct was that Plaintiff would continue to notice that her charts would be audited much more frequently than other nurses.

On or about January 25, 2000, plaintiff was doing her daily functions. Plaintiff happened to be in a room with a doctors mother, attempting to discontinue an IV and restart a new one if possible. Just as plaintiff was about to take out the old IV, the Director of Radiology came in and with no regard for that patients privacy said to her in a rude and abrupt manner "that patient over

6

there needs to go the bathroom" Plaintiff told Mrs. Fogarty that she was in the middle of doing this and you need to call the PCA(patient care assistant) on the floor. Mrs. Fogarty left the room. Plaintiff was preparing to perform a venipuncture on the patient when Mrs. Fogarty again came in and said Helen the PCA was not available and that she needed to go help the patient now. Mrs. Fogarty obviously saw plaintiff with a needle in her hand preparing to perform a venipuncture on a patient but yet she continued to be rude and unprofessional. Plaintiff made no comment, stopped what she was doing (was more important at that time ) and assisted the patient to the bathroom

At that time, the charge nurse (M. Mckay) came into the room and helped plaintiff bring the patient out of the bathroom. Plaintiff went to the Nurse Manager's office to complain about Mrs. Fogarty's behavior and attitude and how unprofessional she was to her in front of a patient. Plaintiff stated to her in her office what purpose does it serve as a patient representative if she is going to act like that. Plaintiff was not berating the patient representative program because she have worked with almost all of them without any incidence and they help the patient which is the main goal . However, Mrs. Fogarty was just plain rude and plaintiff told that to the Nurse Manager S. Wakat in her office, which she thought was private and confidential. It should be noted that it was common knowledge among my supervisors that plaintiff had a lawsuit pending for discrimination and Fogarty must have known since she was very good friends with Lynn Mathis and Nurse Manager Wakat.

A few days later , Mrs. Mathis handed plaintiff a disciplinary form regarding what occurred on January 25 with Mrs. Fogarty which resulted in a three day suspension. Furthermore, there own disciplinary process wasn't even followed, first it is a verbal reprimand, next, written reprimand which was unfounded and then, suspension. Her grievance concerning her suspension was denied. This was a another retaliatory act. Further, other nurses have complained about work conditions and schedules, sometimes in the presence of patients such as Barbara Johnston (complained about work conditions in the presence of Wakat, nurse manager and a patient was

7

present as well), Alicia Ferguson (complained about work schedule in the presence of Wakat and patients), Sue Gorrerl (complained about working conditions in the presence of Wakat and patients). However, none of these nurses were even orally counseled, let alone received any formal discipline.

After plaintiff's suspension was over, she returned to work, embarrassed and not wanting to face anyone. Plaintiff was getting gawked at by administration her first day back and starred at by my fellow co-workers on the floor. Plaintiff was depressed, sad, on edge (with my job you do not need any further tension) Finally plaintiff saw her doctor because she had headaches all the time and her stomach was hurting e all the time. Emotionally and mentally plaintiff could not take it anymore.

In March, plaintiff resigned because she her health was deteriorating and she simply could no longer work for West Side Regional.

**B.    Defendant**

Defendant object to plaintiff's statement as not being short and consice. The defendant denies each and every material allegation of discrimination and retaliation. Defendant asserts that all actions taken were taken for legitimate business purposes. Defendant asserts that plaintiff has failed to establish any claim and can prove no damages. Defendant has also asserted various defenses to the claims plead.

.

**IV.    THE PLEADINGS RAISING THE ISSUES:**

The complaint and answer to complaint with affirmative defenses.

**V.    UNDISPOSED OF MOTIONS:**

Defendant's Motion for Summary Judgment.

**VI.    STATEMENT OF UNCONTESTED FACTS WHICH WILL REQUIRE NO PROOF AT TRIAL, WITH RESERVATIONS, IF ANY:**

Plaintiff was employed as a patient care assistant and subsequently as a registered nurse.

**VII.    ISSUES OF FACT WHICH REMAIN TO BE LITIGATED AT TRIAL:**

1.    Whether Defendant discriminated against plaintiff on the basis of race and or retaliation.

2.    Whether defendant retaliated against plaintiff in violation of 42 U.S.C. 1981.

3.    Whether plaintiff can establish each and every element of her case.

4.    Whether defendant can establish any of its defenses.

5..    What if any damages is plaintiff entitled to.

**VIII.    ISSUES OF LAW ON WHICH THERE IS AGREEMENT:**

1.    The Court has subject matter jurisdiction to hear this dispute.

**IX.    ISSUES OF LAW WHICH REMAIN FOR DETERMINATION BY THE COURT:**

1.    Whether as a matter of law, plaintiff can state a claim for relief;

**X.    TRIAL EXHIBITS:[1]**

1.    Plaintiff's list of exhibits is attached as Attachment 1.

2.    Defendant's list of exhibits is attached as Attachment 2.

**XI.    TRIAL WITNESSES:**

1.    Defendant's list of witnesses is attached as Attachment 3.

2.    Plaintiff's list of witnesses is attached as Attachment 4.

**XII.    STATEMENT CONCERNING WHETHER THIS IS A JURY OR NON-JURY CASE.**

Plaintiff has requested a trial by jury.

**XII.    ESTIMATED TRIAL TIME:**

Three (3) days.

---

[1] The parties respectfully reserve the right to serve and file their objections to each others trial exhibits until June 8, 2001.

9

2.      Defendant's list of exhibits is attached as Attachment 2.

**XI.**     **TRIAL WITNESSES:**

1.      Defendant's list of witnesses is attached as Attachment 3.

2.      Plaintiff's list of witnesses is attached as Attachment 4.

**XII.**    **STATEMENT CONCERNING WHETHER THIS IS A JURY OR NON-JURY CASE.**

        Plaintiff has requested a trial by jury.

**XII.**    **ESTIMATED TRIAL TIME:**

Three (3) days.

**XIII.**   **ESTIMATED ATTORNEY'S FEES:**

The plaintiff estimates that attorney fees will be approximately $75,000.00 through trial.

The defendant contests such an estimate as excessive.

Dated: Fort Lauderdale, Florida
       May 22, 2001

                                        Respectfully submitted,

CARLTON, FIELDS, WARD,
EMMANUEL, SMITH & CULTER, P.A.


ALEXANDER D. DEL RUSSO                   STEWART LEE KARLIN, ESQ.
Attorneys for Defendants                 Attorney for Plaintiff
P.O. Box 150                             400 Southeast Eighth Street
West Palm Beach, FL 33402-0150           Fort Lauderdale, Florida 33316
(561) 659-7070                           (954) 462-1201
Florida Bar No. 350273                   Florida Bar No. 961159

10

**A T T A C H M E N T " 1 "**

AO 187 (Rev. 7187) Exhibit List

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO: 00-6099-CIV-GRAHAM/TURNOFF

COREEN DIAZ,

        Plaintiff,

v.                                       **EXHIBIT LIST**

COLUMBIA HOSPITAL CORPORATION
OF SOUTH BROWARD, AND COLUMBIA
HOSPITAL CORPORATION OF SOUTH
FLORIDA,

        Defendant.

| Presiding Judge: GRAHAM/TURNOFF | | | | | Plaintiff's Attorney: Stewart L. Karlin, Esq. | Defendant's Attorney: Alexander D. Del Russo, Esq. |
|---|---|---|---|---|---|---|
| **Trial Date(s)** | | | | | **Court Reporter** | **Courtroom Deputy** |
| Plf. No. | Date Offered | Marked | Objections | Admitted | EXHIBIT LIST | |
| 1. | | | | | Coreen Diaz (Plaintiff) Personnel File | |
| 2. | | | | | Undated letter from Ms. Diaz | |
| 3. | | | | | Memorandum to Ms. Diaz from Ellen Cohen dated 11/17/97 | |
| 4. | | | | | Letters from patients dated 1/8/99, 11/28/99, 8/15/99, and 10/31/99 | |
| 5. | | | | | Position Description & Performance Evaluation 9/98 - 9/99 and 9/97 - 9/98 | |
| 6. | | | | | Memo from Lynn Mathis to Ms. Diaz dated 6/1/99 | |
| 7. | | | | | Memo from Lynn Mathis to Ms. Diaz dated 6/2/99 | |
| 8. | | | | | Memo from Lynn Mathis to Ms. Diaz dated 6/3/99 | |
| 9. | | | | | Memo from Lynn Mathis to Ms. Diaz dated 6/14/99 | |
| 7. | | | | | Memo from Lynn Mathis to Ms. Diaz dated 6/16/99 | |
| 10. | | | | | Memo from Lynn Mathis to Ms. Diaz dated 6/29/99 | |
| 11. | | | | | Counseling/Corrective Discipline Record dated 6/29/99 | |
| 12. | | | | | Memo from Lynn Mathis to Ms. Diaz dated 6/30/99 | |
| 13. | | | | | Statement from Lynn Mathis to Ms. Diaz dated 6/30/99 | |
| 14. | | | | | Memo from Sue Wakat to Lynn Mathis dated 7/2/99 | |
| 15. | | | | | Memo from Lori B. Davis to Lynn Mathis dated 7/2/99 | |

| | | | | | |
|---|---|---|---|---|---|
| 16. | | | | | Employee Grievance Report dated 7/7/99 |
| 17. | | | | | Letter dated 7/5/99 to Mr. Chaykin from Plaintiff |
| 18. | | | | | Memo from Emman Wimbley to Lillian T. Rolon dated 7/8/99 |
| 19. | | | | | Memo from Kim Jutras to Lee Chaykin dated 7/12/99 |
| 20. | | | | | Memo from Kim Jutras to Lee Chaykin dated 7/12/99 |
| 21. | | | | | Memo from Kim Jutras to Lee Chaykin dated 7/12/99 |
| 22. | | | | | Memo from Kim Jutras to Lee Chaykin dated 7/12/99 |
| 23. | | | | | Memo from plaintiff dated 7/12/99 |
| 24. | | | | | Memo from Plaintiff to Lee Chaykin dated 7/14/99 |
| 25. | | | | | Memo from Aracelis Rivera to Plaintiff dated 7/20/99 |
| 26. | | | | | Memo from Lee Chaykin to Plaintiff dated 8/6/99 |
| 27. | | | | | Letter from Plaintiff's attorney to Michael Joseph, CEO dated 8/27/99 |
| 28. | | | | | Memo to Lee Chaykin from Lynn Mathis dated 9/10/99 |
| 29. | | | | | Letter to Lynn Mathis from Kimberly Jutras dated 9/24/99 |
| 30. | | | | | Memo to Danny Reeves from Lynn Mathis dated 9/27/99 |
| 31. | | | | | Memo from Mathis Lynn to Joseph Michael dated 10/13/99 |
| 32. | | | | | Letter to plaintiff from Lee Chaykin dated 10/29/99 |
| 33. | | | | | Letter to plaintiff from Lee Chaykin dated 11/5/99 |
| 34. | | | | | Memo from Plaintiff to Lee Chaykin dated 11/8/99 |
| 35. | | | | | Memo from Lynn Mathis to Ms. Diaz dated 11/12/99 |
| 36. | | | | | Memo from Lee Chaykin to Lynn Mathis dated 11/18/99 |
| 37. | | | | | Memo from Lee Chaykin to Lynn Mathis dated 11/18/99 |
| 38. | | | | | Memo from Ms. Diaz to Kim Jutras dated 1/19/00 |
| 39. | | | | | Counseling/Corrective Discipline Record dated 1/25/00 |
| 40. | | | | | Memo from Sue Wakat to Lynn Mathis dated 1/25/00 |
| 41. | | | | | Memo from Sue Wakat to Marlene Mckay dated 1/28/00 |
| 42. | | | | | Employee Grievance Report dated 2/2/00 |
| 43. | | | | | Letter dated 2/2/00 for To Whom It May Concern |

| 44. | | | | | Memo from plaintiff dated 2/7/00 |
|---|---|---|---|---|---|
| 45. | | | | | Florida Human Relations Commission Complaint dated 2/14/00 |
| 46. | | | | | Memo from Lee Chaykin to Ms. Diaz dated 2/16/00 |
| 47. | | | | | Letter dated 3/14/00 to whom it may concern |
| 48. | | | | | Letter to Mr. Joseph from Ms. Diaz |
| 49. | | | | | Medical records of plaintiff from Dr. Robert Saez office |
| 50. | | | | | Letter from the FCHR dated 3/20/00 to the Broward County Human Rights Division |
| 51. | | | | | Rebuttal documents |
| 52. | | | | | Impeachment documents |
| 53. | | | | | All of Defendant's Exhibits |

3

ATTACHMENT "2"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

CASE NO. 00-6099-CIV-GRAHAM
Magistrate Judge: Turnoff

CAREEN DIAZ,

       Plaintiff,

v.

COLUMBIA HOSPITAL CORPORATION
OF SOUTH BROWARD,

       Defendant.
_____/

## DEFENDANT'S LIST OF TRIAL EXHIBITS

The Defendant, COLUMBIA HOSPITAL CORPORATION OF SOUTH BROWARD,

INC., d/b/a WESTSIDE REGIONAL MEDICAL CENTER, while reserving all objections, hereby

identifies the following exhibits which it may wish to use at trial:

1.     Westside Employee Handbook

2.     1/16/97 Application for Employment

3.     2/18/97 Nursing Staffing Pool Employee

4.     4/1/97 Acknowledgment of Receipt

5.     Position Description—Patient Care Assistant

6.     10/9/97 Personnel Action Request

7.     10/17/97 Memo Ellen Cohen to Plaintiff

8.     9/98 Evaluation



RECEIVED
JUN 0 1 2001

9.      9/27/98 Personnel Action Request

10.     5/99 draft letter Plaintiff to Hospital Administration

11.     6/1/99 email Lynn Mathis to Plaintiff

12.     6/2/99 email Lynn Mathis to Plaintiff

13.     6/3/99 emails between Lynn Mathis and Plaintiff

14.     Emails re meeting with Kim Jutras

15.     6/29/99 email Lynn Mathis to Plaintiff

16.     6/30/99 Corrective Counseling

17.     6/30/99 email Lynn Mathis to Kim Jutras

18.     7/2/99 email Lori Davis to Lynn Mathis

19.     7/2/99 email Sue Wakat to Lynn Mathis

20.     7/8/99 email Emma Wimbley to Lillian Rolon

21.     7/7/99 Employee Grievance

22.     7/2/99 emails re tuition reimbursement

23.     7/6/99 email re tuition reimbursement

24.     7/14/99 email Plaintiff to Lee Chaykin

25.     8/6/99 response to Grievance

26.     8/27/99 letter Stewart Karlin, Esq. to Michael Joseph

27.     9/10/99 memo Lynn Mathis to Lee Chaykin

28.     9/99 Evaluation

29.     10/22/99 Personnel Action Request

30.     9/24/99 letter Kim Jutras to Lynn Mathis, with attachment

31.     9/27/99 memo Lynn Mathis to Danny Reeves, with attachments

32.     10/13/99 email Lynn Mathis to M. Joseph

2

33.    11/5/99 letter Lee Chaykin to Plaintiff

34.    11/8/99 email Plaintiff to Lee Chaykin

35.    11/12/99 email Plaintiff to Lee Chaykin

36.    11/12/99 emails between Plaintiff and Lynn Mathis

37.    11/16/99 letter Lynn Mathis and documents presented by Plaintiff

38.    1/25/00 email Wanda Fogarty to D. Brindley

39.    2/2/00 Memo Marlene McKay

40.    1/28/00 Corrective Counseling

41.    2/2/00 Employee Grievance

42.    2/7/00 email Plaintiff to Kim Jutras

43.    2/8/00 email Plaintiff to supervisors

44.    2/9/00 email Sue Wakat to Lynn Mathis

45.    2/16/00 response to Grievance

46.    3/14/00 letter of resignation

47.    3/1/00 Application to Hollywood Medical Center

48.    3/3/00 letter Hollywood Medical Center to Plaintiff

49.    3/13/00 Agreement and Promissory Note

50.    6/2/00 Hollywood Medical Center Change in Salary Form

51.    Plaintiff's KRONOS time records

52.    Plaintiff's medical file of Dr. Roberto Saez

**Re National Health Care n/k/a Fort Lauderdale Health and Rehabilitation Center**

53.    3/24/93 Application

54.    4/20/93 Adverse Action Notice

55.    4/20/93 Termination Notice

3

56.    5/14/93 Termination Notice

### Re All About Staffing

57.    11/23/99 Personnel Action Request

58.    1/98 American Heart Association CPR Card

59.    11/98 American Heart Association CPR Card

### Re Donna Bocella

60.    2/2/98 Application for Employment

61.    8/24/98 Personnel Action Request

62.    9/17/98 Memo Ellen Cohen to D. Bocella

### Re Jennifer Stephan

63.    2/5/98 Application for Employment

64.    7/30/98 Personnel Action Request

65.    8/31/98 Agreement and Promissory Note

### Re Michele Puckett

66.    4/5/99 Application for Employment


67.    Plaintiff's Answers to Discovery

68.    All Exhibits Listed on Plaintiff's Exhibit List

69.    All Exhibits for Impeachment or Rebuttal Purposes

4

ATTACHMENT "3"

AO 187 (Rev. 7187) Exhibit List

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO: 00-6099-CIV-GRAHAM/TURNOFF**

COREEN DIAZ,

        Plaintiff,

v.                                                                 **WITNESS LIST**

COLUMBIA HOSPITAL CORPORATION
OF SOUTH BROWARD, AND COLUMBIA
HOSPITAL CORPORATION OF SOUTH
FLORIDA,

        Defendant.

| Presiding Judge: **GRAHAM/TURNOFF** | | | | | Plaintiff's Attorney: Stewart L. Karlin, Esq. | Defendant's Attorney: Alexander D. Del Russo, Esq. |
|---|---|---|---|---|---|---|
| **Trial Date(s)** | | | | | **Court Reporter** | **Courtroom Deputy** |
| Plf. No. | Date Offered | Marked | Objections | Admitted | **WITNESS LIST** | |
| 1. | | | | | Coreen Diaz (Plaintiff) | |
| 2. | | | | | Lee Chaykin, Chief Operating Officer c/o Westside Regional Medical Center | |
| 3. | | | | | Ellen Cohen, Benefits Coordinator c/o Westside Regional Medical Center | |
| 4. | | | | | Wanda Forgaty, Director of Radiology c/o Westside Regional Medical Center | |
| 5. | | | | | Eileen Ciotti, Director of Surgical/Orthopedic Unit -c/o Westside Regional Medical Center | |
| 6. | | | | | Marlene McKay, Fourth Floor Charge Nurse c/o Westside Regional Medical Center | |
| 7. | | | | | Sue Wakat, Former Fourth Floor Director 3151 Hidden Hollow Lane Davie, Florida 33328 | |
| 8. | | | | | Kim Jutras, Assistant Administrator Coral Springs Medical Center 3000 Coral Hills Drive Coral Springs, Florida 33316 | |
| 9. | | | | | Lynn Mathis, c/o Nursing Spectrum 1001 West Cypress Creek Road, Suite 300 Fort Lauderdale, Florida 33309 | |

| 7. | | | | | Mary Beth Thompson Former Director of Education<br>7290 N.W. 5th Street<br>Plantation, Florida |
| 10. | | | | | Trudy Barmley Director of Human Resources<br>Northwest Regional Medical Center<br>Fort Lauderdale, Florida |
| 11. | | | | | Donna Boccella |
| 12. | | | | | Jennifer Stefon |
| 13. | | | | | Michelle Plunket |
| 14. | | | | | All Defendant's witnesses |
| 15. | | | | | Rebuttal witnesses |
| 16. | | | | | Impeachment witnesses |

ATTACHMENT "4"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

CASE NO. 00-6099-CIV-GRAHAM
Magistrate Judge: Turnoff

CAREEN DIAZ,

      Plaintiff,

v.

COLUMBIA HOSPITAL CORPORATION
OF SOUTH BROWARD,

      Defendant.

_____/

## DEFENDANT'S LIST OF TRIAL WITNESSES

The Defendant, COLUMBIA HOSPITAL CORPORATION OF SOUTH BROWARD,

INC., d/b/a WESTSIDE REGIONAL MEDICAL CENTER, hereby files this List of Witnesses

which it may wish to call at trial:

1.    All parties to this action

2.    Eileen Ciotti, Director of Surgical/Orthopedic Unit
    c/o Westside Regional Medical Center

3.    Marlene McKay, Fourth Floor Charge Nurse
    c/o Westside Regional Medical Center

4.    Sue Wakat
    3151 Hidden Hollow Lane
    Davie, Florida 33328



RECEIVED
JUN 0 1 2001

5.    Kimberly Jutras, Assistant Administrator
      Coral Springs Medical Center
      3000 Coral Hills Drive
      Coral Springs, Florida 33316

6.    Lee Chaykin, Chief Operating Officer
      c/o Westside Regional Medical Center

7.    Wanda Fogarty, Director of Radiology
      c/o Westside Regional Medical Center

8.    Lynn Mathis
      c/o Nursing Spectrum
      1001 West Cypress Creek Road
      Suite 300
      Ft. Lauderdale, Florida 33309

9.    Marybeth Thompson
      7390 N.W. 5th Street, Suite 5
      Plantation, Florida 33317

10.   Trudy Bromley, Director of Human Resources
      Northwest Regional Medical Center
      Ft. Lauderdale, Florida

11.   Lori B. Davis
      c/o Westside Regional Medical Center

12.   Records Custodian
      Westside Regional Medical Center

13.   Records Custodian
      National Healthcare, n/k/a Fort Lauderdale Health
      And Rehabilitation Center

14.   Records Custodian
      All About Staffing, Inc.

15.   Records Custodian
      Hollywood Medical Center
      3600 Washington Street
      Hollywood, Florida 33021

16.    All witnesses on Plaintiff's List of Trial Witnesses

17.    All witnesses for impeachment or rebuttal purposes who are presently unknown to Defendant

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished via facsimile and U.S. Mail this 30 day of May, 2001, to Stewart Lee Karlin, Esq., 400 S.E. 8th Street, Fort Lauderdale, Florida 33316.

CARLTON FIELDS, P.A.
P.O. Box 150
West Palm Beach, FL 33402-0150
Telephone:(561) 659-7070
Facsimile: (561) 659-7368
Attorneys for Defendant

By:
    Alexander D. del Russo
    Florida Bar Number 350273

3